**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLOTTE PEREZ WRIGHT, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-6139 |
| THORNTON TOWNSHIP, | Judge Mary M. Rowland |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charlotte Perez-Wright brings suit against Defendant Thornton Township (the "Township"), alleging five Counts. [1]. The Township does not challenge Count I (violation of the Family and Medical Leave Act "FMLA"), and Plaintiff has voluntarily dismissed Count V (Intentional Infliction of Emotional Distress). [22] at 9. In Count II, Plaintiff alleges that the Township retaliated against her in violation of the first amendment under Section 1983, in Count III she alleges retaliatory discharge in violation of state law, and in Count IV, she alleges that the Township unlawfully conspired against her under Section 1983. Although not entirely clear, it appears Plaintiff alleges that the Township's policies or customs was the moving force behind her injuries in Counts II and IV under *Monell*. Before the Court is Defendant's partial motion to dismiss. [19]. For the foregoing reasons, the Court grants the motion.

1

## Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial

2

experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## Background

The following factual allegations are taken from the operative complaint [1] and are accepted as true for the purposes of the motion to dismiss. *See Lax*, 20 F.4th at 1181.

Plaintiff began working for the Township on or about September 19, 2022. [1] at ¶ 8. Plaintiff was a Clerk II at the Calumet City Senior Center; her duties included distributing prepared meals and helping seniors with paperwork. *Id.* at ¶ 9. Plaintiff intended to stay at the Township for the remainder of her career and worked hard to earn and maintain a good personal and professional reputation as a public servant in the community. *Id.* at ¶¶ 9-10. In December 2023, while portraying Mrs. Claus for a Township sponsored holiday event, Plaintiff contracted RSV due to extended outdoor exposure. *Id.* at ¶ 12. As a result of RSV, Plaintiff developed blood clots and was hospitalized. *Id.* at ¶ 13. She spent over two months inpatient. *Id.*

During this time, Plaintiff attempted to obtain short-term disability benefits but was redirected by Human Resources to speak with Township officials Keith Freeman and Robert Hunt. *Id.* at ¶ 14. On or about February 2, 2024, Plaintiff applied for and was granted FMLA leave, beginning on March 1, 2024. *Id.* at ¶ 15. Township records stated that Plaintiff's leave was to end on May 1, 2024, only 8 weeks later, despite the FMLA providing up to 12 weeks. *Id.* at ¶ 16. Prior to May 1, 2024, Plaintiff requested an extension, but her requests were denied. *Id.* at ¶ 17. On or about May

3

6, 2024, Plaintiff was directed to turn in her keys, and she was informed that she had been terminated. *Id*. at ¶ 18. The Township continued to send conflicting correspondence after her termination, including additional FMLA documentation and a backdated termination notice dated in June 2024. *Id*. at ¶ 19.

During Plaintiff's employment, Plaintiff's adult son, Gabriel Cardonas, was also employed by the Township. *Id*. at ¶ 21. In January 2024, Cardonas filed a complaint with Illinois OSHA related to safety concerns at the Township's facilities. *Id*. at ¶ 22. His report was filed around the same time as a similar complaint of another employee, Jerrel Jones. *Id*. Cardonas was terminated within weeks of filing his complaint. *Id*. at ¶ 23. Plaintiff alleges that her termination followed closely after Cardonas', despite her documented medical condition and request for continued FMLA leave. *Id*. at ¶ 24. According to Plaintiff, her termination was motivated not only by retaliation for her own protected medical leave, but also due to her familial relationship and protected association with her son, Cardonas, who engaged in constitutionally protected whistleblowing. *Id*. at ¶ 25.

Plaintiff alleges that the Township has a widespread practice and policy of retaliating against employees for their speech and/or associations, or for taking any actions that the previous Township administration (led by former Township Supervisor Tiffany Henyard) viewed as negative. *Id*. at ¶ 42. Termination was typically carried out by Henyard's allies, Keith Freeman (former Special Assistant to Henyard) and Robert Hunt (former Township Finance Director). *Id*. Several other Township employees, including Lavell Redmond, Cheryl Collins, Sandra Tracy, Bruce

Owens, Karen Johnson, Jerrel Jones, Gabriel Cardonas, Dwayne Thrash, and Samysha Williams, have been terminated (or forced to quit) by Henyard, Freeman, and Hunt for similarly dubious and spurious reasons. *Id*. at ¶ 55. Specifically, the Township retaliated against employees and terminated their employment if they embarrassed the Township or complained of supervisors' unlawful and improper conduct that posed a perceived political risk to Henyard. *Id*. at ¶¶ 53-54. Additionally, Plaintiff's constitutional injury was caused by Freeman and Hunt, two people with policy making authority/final decision-making authority. *Id*. at ¶ 43.

After Plaintiff was terminated, Plaintiff filed a charge of discrimination with the EEOC and subsequently received a Right to Sue letter on March 6, 2025. *Id*. at ¶ 27.

On September 5, 2025, the Township moved to partially dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [19].

## Discussion

### A. Plaintiff does not state a plausible claim for retaliatory discharge

The Township argues that Plaintiff fails to properly allege the essential elements of a retaliatory discharge claim under Illinois law because she has not alleged a violation of a clear mandate of public policy. [19] at 6. Plaintiff responds that she has alleged all elements of the claim [22] at 2-3. The Court agrees with the Township.

To establish a cause of action for retaliatory discharge, Plaintiff must show: (1) that she was discharged in retaliation for her activities and (2) that the discharge is in contravention of clearly mandated public policy. *Palmateer v. International Harvester Co.* (1981), 85 Ill.2d 124, 134, 52 Ill.Dec. 13, 421 N.E.2d 876. The public policy mandate must "strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Id*. Illinois has recognized the limited and narrow tort of retaliatory discharge as an exception to the general rule of at-will employment. *Sullivan v. Progressive Cas. Ins. Co.*, No. 03 C 8487, 2004 WL 1687123, at *3 (N.D. Ill. July 27, 2004) (internal citation omitted). A claim for retaliatory discharge will be denied if only private interests are affected. *Callozzo v. Off. Depot, Inc.*, No. 97 C 5308, 1998 WL 111628, at *2-3 (N.D. Ill. Mar. 6, 1998).

Here, Plaintiff alleges that the exercise of her FMLA rights and her association with her son, Cardenas, violated a clear mandate of public policy. For reasons explained *supra*, the Court disagrees.

The Illinois Supreme Court has recognized retaliatory discharge for two claims: whistle-blowing and worker's compensation claims. *Palmateer v. Int'l Harvester Co.,* 421 N.E.2d 876, 877–79 (Ill.1981) (whistle-blowing); *McGrath,* 731 N.E.2d at 389 (worker's compensation). Illinois courts have been reluctant to expand the tort beyond those, and the Illinois Supreme Court has not expanded the tort of retaliatory discharge if other, adequate safeguards are available. *Sullivan,* 2004 WL 1687123 at *4. The FMLA was designed to balance the legitimate interests of employers with the needs of their employees in obtaining medical leave. Indeed, the

6

FMLA is a statute that affects Plaintiff's private relationship with her employer, not a statute meant to "strike at the heart of a citizen's social rights, duties, and responsibilities". *Callazo*, 11998 WL 111628 is instructive here. In *Callazo*, the district court dismissed the plaintiff's claim for retaliatory discharge under the FMLA, reasoning that (1) the FMLA's purpose was not to protect Illinois citizens from "criminal activity or life-threatening hazards", but instead to protect citizens from retaliatory employers, (2) only private interests are at stake, (3) the FMLA contains its own strong deterrents, and (4) Illinois courts have actively opposed the expansion of retaliatory discharge. *Id*. at \*4-5 (collecting cases). The same reasoning is directly applicable here and likewise supports dismissal of the claim based on the FMLA.

Plaintiff's argument that her association with her son provides an avenue to proceed similarly fails. Plaintiff has not alleged that she, *herself*, engaged in whistle-blowing activity (which would be sufficient to sustain a retaliatory discharge claim). She alleges that she is *associated* with a whistleblower. The Court is unaware of, and Plaintiff has not provided, any cases where the plaintiff can make out a claim for retaliatory discharge where she is alleged to have associated with (e.g., be the mother of) the whistleblower and was not the whistleblower herself. Consequently, Plaintiff's claim for retaliatory discharge fails.

Accordingly, Count III is dismissed with prejudice.

### B. The *Monell* claims

Plaintiff asserts two *Monell* claims against the Township. The Township

7

argues that Plaintiff has failed to establish a deprivation of a constitutional right, Plaintiff has failed to allege a policy or a widespread practice, and Plaintiff's allegations are conclusory. [19] at 6-10. Plaintiff responds that she has alleged a constitutional deprivation, and she has properly alleged a widespread practice theory. [22] at 4-7. The Court addresses each argument in turn.

To state a claim against the City under *Monell,* Plaintiff must show that: "(1) [she] suffered a deprivation of a constitutional right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority, that (3) proximately caused [her] constitutional injuries." *Ovadal v. City of Madison,* 416 F.3d 531, 535 (7th Cir. 2005). The plaintiff must show causation by alleging that the official custom, policy, or practice is the "moving force" behind the alleged injury. *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 306 (7th Cir.2010).

For *Monell* liability to attach under the widespread practice theory, it is well established "that the practice [must be] widespread and that the specific violations complained of were not isolated incidents." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 525 (7th Cir. 2023) (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)) (internal quotation marks omitted).

A person has final policymaking authority for employment purposes if he has "authority to set policy for hiring and firing." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 739 (7th Cir. 1999). ("There must be a delegation

8

of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire.").

      1. *Plaintiff fails to state a claim for First Amendment Freedom of Association Retaliation*

When a public employee alleges that she was fired in violation of her constitutional right to freely associate with others, the Court analyzes the claim under the approach announced by the Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563 (1968) and reiterated in *Connick v. Myers,* 461 U.S. 138, (1983); s*ee also Griffin v. Thomas,* 929 F.2d 1210, 1212–14 (7th Cir.1991) (applying the *Connick* public concern framework to the freedom of association under the First Amendment). To state a claim for First Amendment freedom of association, Plaintiff must allege that the expressive activity that provoked the alleged retaliation was protected by the First Amendment. *Williams v. Seniff,* 342 F.3d 774, 782 (7th Cir. 2003). If the activity was constitutionally protected, the Court will then consider whether the activity was a substantial or motivating factor in the Township's actions. *Id.* If the activity was such a factor, the Court will give the Township the opportunity to demonstrate that it would have taken the same action even in the absence of Plaintiff's exercise of her constitutional rights. *Id.*

To determine whether Plaintiff's association was protected, the Court conducts a two-part analysis: (1) the Court must determine whether a public employee's expressive activity is a matter of public concern. If such activity is of public concern, (2) the Court must then conduct a balancing test, weighing the employee's interest in that expression with the State's interest in promoting the efficiency of its public

9

services. *Id.* The Seventh Circuit has applied this test to both free speech and free association claims. *Gregorich v. Lund,* 54 F.3d 410, 414 and 414 n. 4 (7th Cir. 1995) ("Although *Pickering* focused upon a public employee's right of free speech, while Mr. Gregorich's First Amendment claim focuses upon his right of free association, our Circuit applies the test announced in *Pickering* and *Connick* to both free speech and free association claims.")

Here, Plaintiff has alleged that her termination was motivated by her familial relationship and protected association with her son, who engaged in whistleblowing activity against the Township. [1] at ¶ 25. This allegation is not sufficient to allege a First Amendment retaliation claim. Indeed, this allegation does not even allege a protected activity, mooting further analysis under the *Connick* public concern framework. Specifically, here, Plaintiff only alleges that she had a familial relationship with her son; she does not allege that she expressly spoke out to anyone at the Township, that she stood up for his protected whistleblowing, that she notified her supervisors of her dissatisfaction with her son's termination, or any other allegations where the Court can reasonably infer that her association with Cardonas caused her termination. In her response brief, Plaintiff states that she verbally and nonverbally supported her son (although the Court is left in the dark as to how), and that she had a right to protest the Township's decision to terminate him. It is well established that a plaintiff cannot amend their complaint through a response to a motion to dismiss. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989).

10

Plaintiff cites *Marshall v. Allen*, 984 F.2d 787, 800 (7th Cir. 1993) for the proposition that government employees cannot be fired for the exercise of expressing themselves in support of other employees on a matter of public concern. *Marshall*, however, is distinguishable.[1] In *Marshall*, the plaintiff openly supported several female attorneys ("the *Cary* plaintiffs") who voiced complaints about unequal pay and working conditions at the Chicago Housing Authority ("CHA") Legal Department, subsequently filing a federal lawsuit under Title VII for gender discrimination. 984 F.2d at 790. Specifically, the plaintiff made several statements to his supervisors in support of the *Cary* plaintiffs, he disputed CHA's version of events on record, he openly supported the *Cary* plaintiffs' lawsuit, he shared information with the Cary plaintiffs "which presumably helped them prepare their case against the CHA", and he made favorable comments about them to co-workers after "they allegedly had been stigmatized". *Id.* at 790-901. Conversely, here, Plaintiff has not made allegations of this sort, instead alleging only that the Township terminated her for being Cardonas's mother. This allegation does not rise to the level of protected expressive activity. Her First Amendment retaliation claim therefore fails. Because Plaintiff has not alleged a constitutional violation under the first prong, Plaintiff cannot sustain a *Monell* claim.

Accordingly, Count II is dismissed without prejudice.

---

[1] The Court notes that the Seventh Circuit did not determine in the appeal—which affirmed the district court's denial of qualified immunity—whether the plaintiff's right to freedom of association was violated by the defendants' conduct. *Marshall*, 984 F.2d at 800.

11

2. *Plaintiff has failed to allege a conspiracy claim under Section 1983*

To establish Section 1983 liability through conspiracy, Plaintiff must allege that "(1) the individuals reached an agreement to deprive [her] of [her] constitutional rights, and (2) overt acts in furtherance actually deprived [her] of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). A conspiracy under Section 1983 also requires an underlying substantive constitutional violation. *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). Plaintiff need not prove direct evidence of an agreement. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1255 (7th Cir. 1984) ("Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire."). Each alleged conspirator does not need to agree on the details of the conspiracy or know who the other actors are; "[i]t is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Here, Plaintiff alleges that non-defendants, Freeman and Hunt, expressly agreed to retaliate against her after her son filed a claim with OSHA, refusing to honor her FMLA leave, backdating documentation, and ultimately terminating her unlawfully. [1] at ¶ 50. This allegation describes who conspired against her (Freeman and Hunt) but fails to allege an underlying constitutional violation, as required for a Section 1983 conspiracy claim. Presumably, the underlying constitutional violation was First Amendment retaliation under the freedom of association. However, for reasons described *infra* at 9-11, the Court has found that Plaintiff's familial

12

relationship with Cardonas did not constitute constitutionally protected activity. Because she does not adequately plead an underlying constitutional violation, Plaintiff cannot allege a Section 1983 claim. *See Cefalu*, 211 F.3d at 423 ("The jury's conclusion that Cefalu suffered no constitutional injury thus forecloses relief on the conspiracy claim.") (collecting cases); *see also Ellis v. City of Chi.*, 2016 WL 212489, at *10 (N.D. Ill. Jan. 19, 2016) (dismissing Section 1983 conspiracy claim where the plaintiff had not sufficiently alleged an underlying constitutional violation); *Hill v. City of Chi.*, 2009 WL 174994, at *9 (N.D. Ill. Jan. 26, 2009) ("[I]f a plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim necessarily fails."). For the same reasons, Plaintiff cannot sustain a *Monell* claim.

Accordingly, Plaintiff's Section 1983 conspiracy claim (Count IV) is dismissed without prejudice.

### C. Plaintiff has voluntarily dismissed her IIED claim and request for punitive damages

Plaintiff has voluntarily dismissed her Intentional Infliction of Emotional Distress (IIED) claim and conceded that punitive damages are not recoverable against a municipality in a Section 1983 suit. [22] at 9-10. The Court accordingly dismisses Count V, and Plaintiff may not seek punitive damages.

### CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss [19] is granted. Counts III and V are dismissed with prejudice. Counts II and IV are dismissed without prejudice. Defendant to answer the Complaint by 6/8/26. Fact discovery to close on 6/12/26. [37] By 6/2/26 the parties are to file a status report updating the

court on discovery and whether a settlement conference would be productive.

E N T E R:

Dated: May 18, 2026

MARY M. ROWLAND
United States District Judge

14